CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

**3/31/2023**

LAURA A. AUSTIN, CLERK
BY:   s/ ARLENE LITTLE
     DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

|  |  |
|---|---|
| ALLISON L. CARNER, | CASE NO. 6:22-cv-00030 |
| *Plaintiff*, |  |
| v. | MEMORANDUM OPINION |
| THOMAS E. CLEMENTS, *et al*., |  |
| *Defendants*. | JUDGE NORMAN K. MOON |

The plaintiff in this case alleges Defendants conducted a foreclosure sale of her house and that she was not given sufficient lawful prior notice of the foreclosure sale. This matter was initially before the Court on Defendants' motion to dismiss. At argument, the Court determined that the motion should be converted to a motion for summary judgment to afford additional time for the plaintiff to conduct discovery on the issue of notice. Many months have passed. Defendants have submitted another motion providing proof of notice, asserting that Plaintiff's counsel has made no effort to conduct any discovery in the case since proof of notice was provided, and requesting entry of summary judgment. Plaintiff's counsel has not responded to Defendants' new motion since it was filed months ago. Nor has he filed anything further, requesting any discovery, taking any further action, or otherwise arguing why the case should survive summary judgment.

The Court will grant Defendants' motion for clarification, deny further discovery in this case, and hold that Defendants are entitled to summary judgment on their converted motion for summary judgment.

Background

1. *Factual Background*

Plaintiff Allison Carner is a resident of Bedford County. Dkt. 1 ("Compl.") ¶ 2. Plaintiff filed suit originally in Bedford County Circuit Court against various entities, seeking "compensation for the loss of the equity in her home that was taken from her by Defendants in an improper foreclosure process." *Id.* ¶ 1. These Defendants are Wilmington Savings Fund Society, FSB, Stanwich Mortgage Loan Trust Series 2015-1, Godwin-Jones & Price, P.C., trustee, Thomas E. Elements, Trustee, and Accredited Home Lenders, Inc.

Plaintiff and her now ex-husband obtained a loan secured by a Deed of Trust on her residence on Somerset Drive in Forest, Virginia. *Id.* ¶ 9. The Deed of Trust was dated May 17, 2007. *Id.* ¶ 11. The Deed of Trust secured payment of a Note to Accredited Home Lenders, Inc., the lender, in the amount of $75,000. *Id.* ¶ 12. Plaintiff and her then-husband were listed as borrowers (or trustors) in the Deed of Trust, and the law firm of Godwin-Jones and Price was listed as the trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. ("MERS"), as beneficiary. *See* Dkt. 1-1 at p. 20.

In February 2014, MERS, as nominee for Accredited Home Lenders, assigned the Deed of Trust to HSBC Bank USA, on behalf of "SG Mortgage Securities Trust 2007 AHL1 Asset Backed Certificates, Series 2007 AHL1." That assignment was recorded in the Bedford County Circuit Court Clerk's Office in April 2014. Compl. ¶ 13; Dkt. 1-1 at p. 37.

In April 2015, HSBC Bank assigned the Deed of Trust to Barclays Bank, PLC. That assignment was recorded in September 2015. Compl. ¶ 15; Dkt. 1-1 at p. 40.

In April 2015, Barclays Bank, PLC assigned the Deed of Trust to Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2014-1. That assignment was also recorded in September 2015. Compl. ¶ 14; Dkt. 1-1 at p. 39.

2

Plaintiff alleges that, in 2016, "[a]lthough she was not aware of it at the time, [her] ex-husband, who handled household business and bill payment, experienced financial difficulties and fell behind in payments on the Note in 2016." Compl. ¶ 17.

In July 2016, Ms. Elisabeth Ostermann, a "Vice-President, of Carrington Mortgage Services, LLC," which was listed as "Attorney-in-Fact" for Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust Series 2015-1, appointed Thomas E. Clements, as "Substitute Trustee." Dkt. 1-1 at p. 43. The appointment of Substitute Trustee was recorded on August 8, 2016. Dkt. 1-1 at p. 42.

On September 14, 2016, Clements conducted a foreclosure sale of the property, at the Bedford County Courthouse. Plaintiff alleges that, upon information and belief, "Clements gave notice of the time, date, and place of sale once a week for two consecutive weeks by advertisement in the Bedford Bulletin." Compl. ¶ 23. Plaintiff attached a copy of the advertisement. *Id.*

However, Plaintiff alleges that "[n]either Plaintiff nor her ex-husband received any foreclosure notice because, as was admitted by Defendants Clements, Wilmington, and Stanwich in the Trustee's Deed, notice was sent to someone named Robin Ann Jenkins, whom Plaintiff does not know." *Id.* ¶18. Plaintiff further alleges that "Forest, although part of Bedford County, is a suburb of Lynchburg and, therefore, the residents of Forest are far more likely to take the Lynchburg newspaper than the Bedford Bulletin." *Id.* ¶ 24. Moreover, Plaintiff alleges that "in the digital age, very few people take any newspaper." *Id.* Accordingly, she argues that notice in a newspaper is insufficient for the taking of someone's property. *Id.*

A Substitute Trustee's deed was prepared dated September 14, 2016, stating among other things that the trustee gave fourteen days' notice of the sale "to the present owner of the property, Robin Ann Jenkins," and gave notice of the time, date, and place of the sale "once a

week for two consecutive weeks by advertisement in the Bedford Bulletin, a newspaper of general circulation in Bedford County." The deed further stated that the property went up for sale in front of the Circuit Court of Bedford County, Virginia at which point it was sold to the highest bidder for the sum of $87,114. The deed also stated that the tax assessment of the property was for $482,800. *See* Dkt. 1-1 at p. 46–48.

Plaintiff alleges that on September 20, 2017, a summons for unlawful detainer was taken out against Plaintiff by LW Right, LLC, as a result of which she was forced to vacate her home. Plaintiff further alleges that she "did not learn of the foreclosure or that title to her home had been transferred until she was evicted a year later." Compl. ¶ 27.

2. *Procedural History*

Plaintiff initially filed suit in Bedford County Circuit Court. Dkt. 1-1. Count One, against Clements, was for breach of contractual and fiduciary duties; Count Two, against Wilmington, Stanwich, and Clements, was for breach of contract; and Count Three, against Godwin-Jones & Price and American Home Lenders, was also for breach of contract.

In Count Two (the only count Plaintiff brought against Defendants Wilmington and Stanwich), Plaintiff alleged that they had a duty under Virginia law and the Deed of Trust to provide notice of default under the Note and notice of a foreclosure sale. Compl. ¶¶ 46–47. However, Plaintiff alleged that they failed to provide such notices to Plaintiff and her ex-husband as owners of the house, which she claims constituted a breach of the terms of the Note, Deed of Trust, and Virginia law. *Id.* ¶ 49. Moreover, Plaintiff alleged another breach of contract by arguing that Defendant Clements was not properly appointed as trustee. *Id.* ¶ 50. And, Plaintiff alleged that Defendants Wilmington and Stanwich instructed Defendant Clements to foreclose on the property "without making a reasonable effort to obtain the highest possible price," which she claims was another breach of the Note and Deed of Trust. *Id.* ¶ 51.

4

In May 2022, Defendants Wilmington Savings Fund Society, FSB ("Wilmington") and Stanwich Mortgage Loan Trust Series 2015-1 ("Stanwich"),[1] subsequently removed the action to this Court. Dkt. 1. Defendants subsequently filed a motion to dismiss. Dkt. 5, 6. In their motion to dismiss, Defendants argued that Plaintiff's claim that Wilmington lacked the authority to appoint a substitute trustee under the Deed of Trust was untenable under Virginia law. Dkt. 6 at 5–9. Moreover, Defendants argued that Plaintiff had failed to allege a plausible breach of contract claim, premised on alleged insufficiencies in the foreclosure sale notices, foreclosure sale advertisement, or foreclosure sale price. *Id.* at 9–18. Defendants also submitted for the Court's consideration a Notice of Federal Tax Lien, in the amount of $70,701.98 on the property. Dkt. 6-1. Defendants had argued that the federal tax lien "naturally affected the sale price" of the property. Dkt. 6 at 1. Defendants also attached an unsigned letter, dated August 12, 2016, and addressed to Plaintiff and her ex-husband, which purported to provide notice of the then-upcoming foreclosure sale on September 14, 2016. Dkt. 6-2.

After some time (and the issuance of a Show Cause Order by the Court), Plaintiff's counsel filed a memorandum in opposition to the motion. Dkt. 13. Plaintiff's main point in the short response was that the Court should not be able to consider the documents submitted by Defendants accompanying the motion to dismiss—the Notice of Federal Tax Lien, or the letter concerning notice of the foreclosure sale. Dkt. 13 at 2. Defendants filed a reply brief in further support of their motion. Dkt. 15. The matter being briefed, the Court heard argument thereon. Dkt. 17 (minutes).

---

[1] None of the other Defendants have entered an appearance, and Plaintiff has not made any efforts to hold them in default.

At oral argument in September 2022, Plaintiff's counsel pressed the issue of lack of notice, saying "we have pled that there was no notice. And the first my client ever heard of this was when she received a summons and unlawful detainer by the new owner of the house kicking her out. She had no idea of any of this." Dkt. 22 at 14. Plaintiff's counsel argued that the complaint only indicated that Defendants "had sent the notice to someone named Robin," not Plaintiff, and that was enough to "allow[ ] this to survive the motion to dismiss." *Id.* at 15. He also contended that the letter provided by Defendants was not a document of which the Court could take judicial notice on a motion to dismiss. *Id.* at 16. Plaintiff's counsel also argued that the Court should not take judicial notice of the Notice of Federal Tax Lien, though he conceded that he was "not saying that tax lien is a fraudulent copy." *Id.* at 11–12. The Court then asked Defense counsel "[w]hat is the evidence that [the notices] were sent to the borrower[s] … or to the plaintiff?" *Id.* at 19. Defense counsel responded that "proof of that is not immediately or readily available," considering the age of the case and that the tracking numbers showing the delivery of the notices of sale were no longer usable. *Id.* at 19–20. Defense counsel argued, however, that inadvertent failure would not affect the validity of the sale, so the Court could nonetheless rule on the motion to dismiss. *Id.* at 20.

The Court concluded that "[t]he best thing is for the Court to convert this to a motion for summary judgment." *Id.* at 20. While the Court would "take judicial notice of the Federal Tax Lien," the Court allowed that the parties "may want to do such discovery as necessary with regard to the notice" and any other issues in dispute. *Id.* at 21. The Court explained that Defendants would have to show some proof of notice of the foreclosure sale, even if it was circumstantial evidence. *Id.* The Court considered that any such evidence, including "if the notice of foreclosure appeared in the newspaper," ought to be presented and considered on a motion for summary judgment." *Id.* at 22. The Court inquired how much time the parties would

6

need to "complete any discovery," to which Plaintiff's counsel responded that he "would like to have time to look into that notice," and that he would want more than a month. *Id.* The Court stated that the parties should meet and confer, develop a "proposed trial schedule," and a "schedule of pretrial discovery," to precede a motion for summary judgment. *Id.* at 25.

After several months passed, on January 20, 2023, Defendants filed a "Motion for Clarification Regarding Further Discovery Prior to Summary Judgment." Dkt. 27. Therein, Defendants represented that they contacted the law firm involved in the Foreclosure Sale (acting as legal counsel for the substitute trustee, Clements), and they received postmarked envelopes demonstrating that Notice of Sale were mailed to Plaintiff and her ex-husband Troy Carner by certified mail at the property approximately a month before the foreclosure sale. *Id.* at 4; *see also* Dkt. 27-1 at 10–11 (Ex. B). These showed attempted delivery by certified mail on August 18 and August 24, 2016, before being returned to sender as unclaimed and unable to be forwarded. *Id.* In addition, that law firm submitted an affidavit, stating that "[o]n August 12, 2016, written notices containing the Foreclosure Sale's date, time, location, and other information were sent to both [Plaintiff] Allison L. Carner and Troy L. Carner at the Property address (i) by regular First Class U.S. Mail, postage prepaid, and (ii) by certified mail, return receipt requested, postage prepaid," and with a U.S. Postal Service tracking number. Dkt. 27-1 at 3 (¶ 5). The affiant stated that the Notices of Sale (also attached) were mailed with the U.S. Postal Service on August 12, 2016. *Id.* (¶ 6). However, the affiant further explained that the Notices of Sale sent by certified mail were returned, bearing the notation that they were "UNCLAIMED" following multiple attempts at delivery. *Id.* (¶ 7).

Defendants wrote in their Motion for Clarification that they sent that information to Plaintiff's counsel, and that Defendants proposed a joint discovery plan back in September 2022 and received only a response that Plaintiff's counsel "would look at it that week," but nothing

further. Dkt. 27 at 4. Defendants further asserted that, "[t]o date, Plaintiff has made no effort to conduct any further discovery in this case." *Id.* at 4–5. Accordingly, with that background, Defendants contended "that there is no genuine need for further discovery and this matter is ripe for consideration of [Defendants'] (converted) motion for summary judgment." *Id.* at 5. Defendants also argued that summary judgment was appropriate because there was no genuine dispute of material fact that Notice of the Foreclosure Sale was properly given to Plaintiff, *id.* at 6–8, and that there was "no genuine need for further discovery before summary judgment," *id.* at 8–10. Defendants did not seek oral argument on the motion. Dkt. 28.

Though Defendants' Motion for Clarification, seeking entry of summary judgment in their favor has been pending since January 20, 2023, Plaintiff's counsel has not responded thereto in the months that have followed.[2]

<u>Standard of Review</u>

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "To meet the Rule 8 standard and 'survive a motion to dismiss, a complaint must contain

---

[2] On February 14, 2023—over a month after the filing of the motion, and well beyond the date the Pretrial Order affords for oppositions to motions, Dkt. 7 ¶ 7—Plaintiff's counsel emailed the Clerk's Office in regard to the matter of scheduling the tentative bench trial date. In that communication, Plaintiff's counsel stated that he was "on a ship in the Atlantic" had had "very limited access to internet." (Capitalization omitted). He noted that he "will not be back in my office until March 6th," and requested that the case not be decided "until [he] ha[s] had an opportunity to respond in proper form." Needless to say, several more weeks have passed since his anticipated return to the office, without filing.

8

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

If, however, "a party relies on evidence outside of the pleadings to support its motion, the court may convert the motion to dismiss to a motion for summary judgment under Rule 56." *Whittington v. Shenandoah Cnty. Virginia*, No. 5:21-CV-00066, 2022 WL 2528250, at *3 (W.D. Va. July 7, 2022) (citing Fed. R. Civ. P. 12(d)). If a court elects to convert a motion to dismiss to one for summary judgment, then "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Barjo v. Cherian*, 349 F. Supp. 3d 510, 515 (D. Md. 2018) (citing Fed. R. Civ. P. 12(d)).

However, "the party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (cleaned up). To raise the issue that more discovery is needed, a non-movant must typically file a Rule 56(d) affidavit, explaining the "specified reasons" why it "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Indeed, the Fourth Circuit "place[s] great weight on the [Rule 56(d)] affidavit," and cautioned that "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of [Rule 56(d)] to set out the reasons for the need for discovery in an affidavit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Moreover, a Rule 56(d) request is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle ex rel. Est. of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (citation omitted).

"Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (quoting Fed. R. Civ. P. 56(a)). "The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact." *Sedar v. Reston Town Ctr. Prop., LLC*, 998 F.3d 756, 761 (4th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant has made this threshold demonstration, the nonmoving party, to survive summary judgment, must demonstrate specific material facts that give rise to a genuine issue." *Sedar*, 988 F.3d at 761 (citing *Celotex Corp.*, 477 U.S. at 323). A nonmovant's position must be supported by more than a "mere scintilla of evidence" or "conclusory allegations or denials" to preclude an award of summary judgment. *Id.* (citation omitted). In ruling on a motion for summary judgment, the court must "adhere to the axiom that ... '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan*, 572 U.S. at 651, (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986)).

<u>Reasoning</u>

Plaintiff's only claim against Defendants Wilmington and Stanwich was for a breach of contract under Virginia law. Compl. ¶¶ 45–53. To assert a breach-of-contract claim in Virginia, a plaintiff must allege: (1) a legally enforceable obligation owed by the defendant to the plaintiff; (2) the defendant's breach of that obligation; and (3) damage to the plaintiff as a result of the breach. *Riley v. Barringer*, 337 F. Supp. 3d 647, 654 (W.D. Va. 2018) (citing *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006)).

In this case, Plaintiff alleged that these Defendants breached the terms of the Note and Deed of Trust, as well as Virginia law by (1) failing to provide notice of default and notice of

10

foreclosure to Plaintiff, *id.* ¶ 49, (2) improperly appointing Clements as substitute trustee, *id.* ¶ 50, and (3) instructing Clements to foreclose upon the property without making a reasonable effort to obtain the highest possible sale price, *id.* ¶ 51. None of these claims have any merit, and Plaintiff has failed to demonstrate the existence of a genuine issue of material fact that would prevent entry of summary judgment in favor of Defendants.

       1. *Alleged Insufficient Notice*

       Plaintiff's first argument is that Defendants failed to provide notices required by the Deed of Trust and Note, as well as Virginia law.

       The Deed of Trust provides, in relevant part, that "[i]f Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable law." Deed of Trust ¶ 18. The Deed of Trust further stated that Plaintiff agreed that "[a]ny notice to Borrower provided for in this Security Instrument shall be *given* by delivering it or mailing it by first class mail unless applicable law requires the use of another method." *Id.* ¶ 13. The "applicable law" here is set forth in Va. Code § 55-59.1, which provided, in pertinent part:

> In addition to the advertisement required by § 55-59.2, the trustee or the party secured shall give written notice of the time, date, and place of any proposed sale in execution of a deed of trust … by personal delivery or by mail to (i) the present owner of the property to be sold at his last known address as such owner and address appear in the records of the party secured …
>
> Mailing of a copy of the advertisement or a notice containing the same information to the owner by certified or registered mail no less than 14 days prior to such sale … shall be sufficient compliance with the requirement of notice.

Dkt. 27-4 (providing then-applicable Va. Code § 55-59.1, which has since been amended).

       The Court agrees with Defendants that the Certified Mail Envelopes, in connection with the attached Notices of Sale and the affidavit by the law firm working on behalf of substitute

trustee Clements, demonstrate that Notice of Sale was given to Plaintiff on August 12, 2016, the date of the U.S. Postal Service postmark; that the U.S. Postal Service attempted delivery twice, and that on September 11, 2016, the U.S. Postal Service returned the Notices of Sale as "unclaimed." *See* Dkt. 27-1 at 10–11 (Ex. B); Dkt. 27-1 at 3 (¶¶ 5–7); Dkt. 27-1 at 4–9. Accordingly, there is no genuine dispute of material fact that the Notices of Sale were given to both Plaintiff and her ex-husband Troy Carner by certified mail by that August 12, 2016—thirty-six days before the foreclosure sale. That certified mailing complied with the terms of the Deed of Trust as well as then-applicable Virginia law, Va. Code § 55-59.1. At most then, Plaintiff has contended that she did not actually receive the notice of foreclosure, but the law does not require proof that the homeowner actually received the notice, only that notice be given and the terms of mailing are laid out by statute and deemed sufficient compliance with the notice requirement. *See* Va. Code § 55-59.1; *see, e.g.*, *Principal Res. Mortg. / Sec. of Housing and Urban Dev. v. O'Neal*, 55 Va. Cir. 250, 2001 WL 34037308, at *1 (Va. Cir. Ct. May 11, 2001) ("Actual receipt of the notice of foreclosure is not required under § 55-59.1."). In any event, Plaintiff has not even introduced any evidence, by deposition testimony, declaration or otherwise, that she did not actually receive notice, she has only alleged that fact in her complaint and argued as much through counsel at oral argument. At bottom, Plaintiff has introduced not even a "scintilla" of evidence such as would give rise to a genuine issue of material fact that Defendants failed to give proper notice under the terms of the Deed of Trust or Virginia law.[3]

---

[3] To the extent Plaintiff has claimed these Defendants committed a breach of contract on account of alleged failures arising out of the foreclosure sale advertisement, that claim similarly fails. The law provides that the foreclosure sale may be advertised in any "newspaper having a general circulation in the county or city in which the property to be sold" is situated. Va. Code § 55.1-322(A). Whether a newspaper is of "general circulation" depends on the substance of its content and not the size of its audience. *In re Landmark Comm's, Inc.*, 58 Va. Cir. 433, 2002 WL 31431516, at *2 (Va. Cir. Ct. Apr. 8, 2002). Plaintiff's conclusory allegations that the

2.  *Alleged Improper Appointment of Substitute Trustee*

Plaintiff's second argument is that Defendants committed a breach of contract because Defendant Clements' appointment as substitute trustee was "invalid." Compl. ¶ 19. Plaintiff argues that an employee of Carrington Mortgage "had no right to sign the Appointment of Substitute Trustee document," and "does not have legal authority to act on behalf of the beneficiary of said Deed of Trust." *Id.* ¶ 20. According to Plaintiff, because Defendants Wilmington and Stanwich had a contractual duty to conduct a proper foreclosure sale according to the terms of the Note, Deed of Trust, and under Virginia law, by conducting the foreclosure sale without the alleged appointment of a substitute trustee, Plaintiff contends that Wilmington and Stanwich breached their contractual duties. *Id.* ¶ 22; *see also id.* ¶ 50 (alleging that conducting foreclosure when "Clements was not properly appointed … constitutes a breach of the terms of the Note and Deed of Trust").

This argument lacks merit. The Deed of Trust provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times *without prior notice to the borrower*." Deed of Trust ¶ 20 (emphasis added). It also provides that, "[l]ender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all title, power and duties conferred upon Trustee herein and by Applicable Law." *Id.* ¶ 24. Plaintiff signed the Deed of Trust. Moreover, the Fourth Circuit has

---

Bedford Bulletin only has "very few people" take any newspaper is therefore both irrelevant and unsupported. *See* Compl. ¶ 24. In any event, Plaintiff has conceded the advertisement was included in that paper for two consecutive weeks giving the time, date and place of the foreclosure sale and attached the advertisement to her complaint. *Id.* ¶ 23. At bottom, Plaintiff has not persuasively argued, let alone demonstrated, the existence of any genuine issue of material fact that the advertisement of the foreclosure sale did not comport with applicable law or constituted breach of contract.

interpreted this language as providing that not just the original lender but "any subsequent purchaser of the deed of trust" may appoint a substitute trustee and foreclose on the property. *Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 625 (4th Cir. 2011). Further, to the extent Plaintiff challenges Clements' authority on the basis that there was an asserted failure to record assignments of the Deed of Trust, the Fourth Circuit in *Horvath* also rejected that argument: "[w]hile Virginia law allows parties to transfer securities like the deed of trust, it does not require them to record such transfers in the land records. … In other words, the parties may elect to record the transfer in the land records, but their failure to do so does not undermine the transaction in any way." *Id.* at 626.

Moreover, courts have rejected the argument that "a secured party is required to come to a court of law and prove its authority or standing to foreclose on the secured property," which is a contention "contrary to Virginia's non-judicial foreclosure laws." *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F. Supp. 2d 714, 721 (W.D. Va. 2011) (Conrad, J.). And, to the extent that Plaintiff challenges any assignment, because Plaintiff as a borrower was not a party to the assignments of the Deed of Trust, and not an intended beneficiary of the assignment, she "lacks standing to attack the validity of the assignment." *Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (explaining that "the assignment does not affect [borrower's] rights or duties at all," as she "still has the obligation under the note to make payments," and "the only thing the assignment affects is to whom [the borrower] makes the payments," meaning "she has no standing to challenge it").

Further still, the undisputed documentary record in this case establishes that Wilmington was assigned the right to enforce the Deed of Trust through a recorded chain of assignments attached to the Complaint. *See* Dkt. 1-1 at 37–43. And Wilmington, through its loan servicer and attorney-in fact Carrington, could lawfully appoint a substitute trustee, which it did. *Id.* at 43.

14

Plaintiff has not challenged any of these points in opposition to Defendants' motion to dismiss, now converted to a motion for summary judgment. Nor has Plaintiff submitted any documents or evidence to the contrary. They compel the conclusion that Plaintiffs' claim lacks merit on the basis that there was an invalid assignment or based on any alleged lack of authority on the part of the substitute trustee or failure to properly record the assignments.

3. *Alleged Unreasonable Foreclosure Sale Price*

Lastly, Plaintiff argued that Defendants committed a breach of contract by directing the substitute trustee Clements to foreclose upon the property without making a reasonable effort to obtain the highest possible sale price. Compl. ¶ 51. Plaintiff alleged that while the Property had an assessed value of $482,800, it was sold for only $87,114. *Id.* ¶ 34. To start, Plaintiff persuasively argues that the claim is largely in effect a breach of a fiduciary duty claim arising out of the contract, *i.e.*, the Deed of Trust, that should have been brought against the Defendant Clements as the substitute trustee, rather than against the foreclosing lender. *See* Dkt. 6 at 14–15; *see also Crosby v. ALG Trustee, LLC*, 822 S.E.2d 185, 189 (Va. 2018) (describing similar action against trustee as a "breach of fiduciary duty arising out of contract," namely, the deed of trust, which "sounded in contract, not tort").

Assuming the claim cognizable against Defendants Wilmington and Stanwich, it is well settled that "[u]nless the price at which the property was sold was so grossly inadequate as to shock the conscience," such as would "raise a presumption of fraud, the [foreclosure] sale must stand." *Cromer v. De Jarnette*, 51 S.E.2d 201, 204 (Va. 1949). And the "forced sale value is rarely equivalent to the fair market value as is fixed by negotiations between one is who is not compelled to sell and one who is not compelled to buy." *Id.* However, while a "significant discrepancy between the sales price and the value of property," can render such a claim plausible, *see Crosby*, 822 S.E.2d at 191–92, here any such disparity would not account for the

existence of the sizable, unpaid $70,701.98 federal tax lien—which was docketed in 2011 and concerned taxes due as early as 2005, resulting in likely substantial penalties and interest. *See* Dkt. 6 at 16 n. 9; Dkt. 6-1 at 2.

Given the IRS's rights vis-à-vis the Notice of Federal Tax Lien on the property, any disparity in foreclosure sale price and the assessed tax value is greatly reduced. Moreover, given that Plaintiff has opted not to present any evidence in support of her argument that the foreclosure sale price was inadequate, the Court concludes on the present record that Plaintiff has not demonstrated the existence of a genuine issue of material fact regarding the adequacy of the sale price, such as would preclude entry of summary judgment in Defendants' favor on this final claim.

*        *        *

A final word is warranted about the posture of this case. At the time the Court informed the parties it intended to convert Defendants' motion to dismiss to a motion for summary judgment, the Court repeatedly explained that the parties would be afforded the opportunity to conduct discovery, especially on the issue of notice. Plaintiff expressed an intent to seek such discovery at that time. Since then, and notwithstanding that such substantial time has passed affording her such opportunity, absolutely nothing in the record indicates that Plaintiff has availed herself of that opportunity. Plaintiff has not submitted a Rule 56(d) affidavit saying summary judgment is not now appropriate and more discovery is needed. Plaintiff has not made any filing or argument suggesting that she has engaged in any more discovery at all. Plaintiff has not even submitted a response to Defendants' motion requesting entry of summary judgment, though months have passed. At bottom, Plaintiff has not shown the existence of any genuine dispute of material fact such as would preclude entry of summary judgment in Defendants' favor.

For these reasons, in an accompanying order, Defendants' (converted) motion for summary judgment will be granted, Dkt. 5, as will Defendants' motion for, Dkt. 27. Defendants Wilmington and Stanwich will further be awarded summary judgment.

The Clerk of Court is directed to send this Memorandum Opinion to the parties.

ENTERED this __31st__ day of March, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

17